IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LISA SWEENEY,                                    3:16-cv-01802-BR

          Plaintiff,                             OPINION AND ORDER

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner, Social
Security Administration,

          Defendant.


**MERRILL SCHNEIDER**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

          Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011

---

[1]  On January 23, 2017, Nancy A. Berryhill was appointed the Acting Commissioner of the Social Security Administration and pursuant to Federal Rule of Civil Procedure 25(d) is substituted as Defendant in this action.

**DAVID MORADO**
Regional Chief Counsel
**MARTHA A. BODEN**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-3710

Attorneys for Defendant


**BROWN, Judge.**

Plaintiff Lisa Sweeney seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.


## ADMINISTRATIVE HISTORY

Plaintiff protectively filed her application for SSI on June 18, 2012. Tr. 281.[2] Plaintiff alleged a disability onset date of August 4, 1999. Tr. 281. Plaintiff's applications were

---

[2] Citations to the official transcript of record filed by the Commissioner on March 28, 2017, are referred to as "Tr."

denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on July 23, 2014, and a supplemental hearing on October 28, 2014. Tr. 42-70, 71-88. Plaintiff, an independent medical expert, and a vocational expert (VE) testified. Plaintiff was represented by an attorney at the hearings.

On January 30, 2015, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 21-36. On July 11, 2016, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-3. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On September 13, 2016, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on May 6, 1969. Tr. 183, 191. Plaintiff was 45 years old at the time of the hearings. Plaintiff has a high-school equivalency degree. Tr. 80, 319. The ALJ found Plaintiff does not have any past relevant work experience. Tr. 35, 65.

Plaintiff alleges disability due to herniated discs in her back, "severe sleep apnea," bipolar disorder, congenital adrenal hyperplasia, "severe" restless leg syndrome, arthritis, and high

cholesterol.  Tr. 318.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  *See* Tr. 23-35.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.


**STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is

"relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

I.   **The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial

gainful activity (SGA). 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*,

659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).


**<u>ALJ'S FINDINGS</u>**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since June 18, 2012, the application date.  Tr. 23.

At Step Two the ALJ found Plaintiff has the severe

impairments of obesity; degenerative disc disease affecting the lumbar spine; mild degenerative joint disease; right trochanter bursitis; and mental disorders "variously described as bipolar, post-traumatic stress disorder ("PTSD"), and history of alcohol dependence." Tr. 23-25.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 25-27. The ALJ found Plaintiff has the RFC to perform light work except that Plaintiff can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit four hours at one time and up to a total of six hours in an eight-hour workday; stand and walk two hours at one time and up to a total of four hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; occasionally be exposed to extreme cold and vibration; and never work around hazards such as unprotected heights or moving mechanical parts. The ALJ found Plaintiff does not have any limitations in understanding or memory; has sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek; should have only brief interactions with the general public and coworkers; and can accept supervision. Tr. 27-35.

At Step Four the ALJ concluded Plaintiff has not performed any past relevant work.  Tr. 35.

At Step Five, however, the ALJ concluded Plaintiff can perform other work that exists in significant numbers in the national economy including as a laundry folder, a price marker, and a silver wrapper.  Tr. 35-36.  Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 36.


## DISCUSSION

Plaintiff contends the ALJ erred when she:

(1) Found the following conditions were not severe medically determinable impairments at Step Two:  arthritis, ulnar collateral ligament injury in Plaintiff's left hand, left shoulder acromioclavicular joint spurring, cervical-spine degeneration, congenital adrenal hyperplasia with salt washing, sleep apnea, and "multiple degenerating uterine leiomyomata";

(2) Failed to find Plaintiff disabled at Step Three under Listing 1.04A as a result of her back impairments;

(3) Discredited Plaintiff's testimony;

(4) Discredited the medical opinions of Douglas Eubanks, D.O. (Plaintiff's treating physician); Curtis Hill, M.D. (Plaintiff's treating neurosurgeon); and the nonexamining opinion of Megan D. Nicoloff, Psy.D., and Kardell N. Kennemer, Psy.D.; and

(5) Failed to assess the lay-witness testimony of Sherry Sweeney, Plaintiff's partner.

## I. **Step Two**

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(a)(4)(ii); *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.921(a), (b). Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . . [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).

The Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating a specific impairment as severe at Step Two is harmless if the ALJ, nonetheless, accounted for the limitations imposed by that condition in his assessment of the claimant's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In her opening brief Plaintiff identifies several conditions that she contends the ALJ erroneously concluded are not severe impairments at Step Two:

> Substantial medical evidence of record shows that the claimant has been diagnosed with, suffers serious symptoms from, and has been treated for the following additional severe impairments: arthritis of multiple joints, including right hip and fingers, with associated pain and limited range of motion (Tr. 667, 677, 727, 753, 1108, 1223); ulnar collateral ligament tear of the left hand (Tr. 846); degenerative spurring of the AC joint in the left shoulder, with pain, decreased range of motion, decreased strength in extremity, and tender to palpation (Tr. 789, 888, 894); degenerative changes of the cervical spine, with neck pain, decreased sensation, and limited range of motion (Tr. 888, 894, 901, 1023-1024, 1028-1029, 1185); congenital adrenal disease/salt-wasting CAH (Tr. 419, 1247); sleep apnea (Tr. 802); and multiple degenerating uterine leiomyomata (Tr. 1169).

Pl.'s Mem. in Support (#15) at 13. Plaintiff repeats this lengthy sentence in her Reply Memorandum (#19), but she does not at any time provide a specific argument as to why each listed condition meets the Step Two standard. Instead Plaintiff merely lists each of the conditions together with references to page numbers in the record that Plaintiff apparently contends support

her unelucidated claim that the ALJ erred when she did not find each of those impairments to be severe.

This Court, sitting in an appellate capacity, cannot consider arguments "'that are not specifically and distinctly argued in an appellant's opening brief.'" *Carmickle v. Comm'r Soc. Sec. Admin.*, 553 F.3d 1155, 1161 n.2 (9th Cir. 2008)(quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).  Because Plaintiff has failed to provide any substantive argument in support of her various Step Two claims, the Court may only speculate as to Plaintiff's contentions based solely on citations to pages in the record.  Plaintiff, therefore, falls short of "specifically and distinctly" presenting these arguments to this Court.  *See Carmickle*, 553 F.3d at 1161 n.2.

Accordingly, on this record the Court will not consider Plaintiff's Step Two arguments.

## II.  **<u>Step Three</u>**

At Step Three the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).

As noted, Plaintiff contends her back conditions meet Listing 1.04A, and, therefore, the ALJ erred when she did not find Plaintiff disabled at Step Three.  In order to be found

disabled at Step Three under Listing 1.04, Plaintiff's back

conditions must meet the following criteria:

> Disorders of the spine (e.g., herniated nucleus
> pulposus, spinal arachnoiditis, spinal stenosis,
> osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture), resulting in compromise
> of a nerve root (including the cauda equina) or the
> spinal cord.  With:
>
> Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of
> motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness)
> accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg
> raising test (sitting and supine);

20 C.F.R. pt. 404, subpt. P, app. 1.

Plaintiff contends the following evidence establishes the

criteria of Listing 1.04A are met:

> Ms. Sweeney asserts that she does meet Listing 1.04A,
> as the medical record establishes that she has nerve
> root compression, as established by MRI and diagnosis
> (Tr. 1242-1244, 1300), with:  (1) neuroanatomic
> distribution of pain, with radiating pain to the right
> leg (Tr. 887, 1299-1300); (2) limitation of motion of
> the spine, established through physical examination
> (Tr. 858, 864, 867, 872, 877, 880, 883, 886, 1300);
> (3) motor loss accompanied by sensory or reflex loss,
> as evidenced by treatment notes showing 1/5 strength in
> her right leg, "unable to move her leg forward due to
> pain," difficulty raising right leg, and reflexes 0-1
> (Tr. 941, 960, 1300); and (4) positive straight-leg
> raising test, established through physical examination
> (Tr. 904, 1299-1300).

Pl.'s Mem. in Support (#15) at 14.  Listing 1.04A is the only

subsection applicable to Plaintiff's contention that the ALJ

erred at Step Three when she found that Plaintiff is not disabled

at that step.  The ALJ found Plaintiff did not meet Listing 1.04

13 – OPINION AND ORDER

because "the medical evidence does not show the required objective signs of neuroanatomical distribution of pain, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." Tr. 25.

The ALJ relied on the testimony of nonexamining medical expert Eric Schmitter, M.D., who testified at the October 28, 2014, hearing that Plaintiff "does not meet or equal a listing because she has no neurological components to the objective findings in the record that was provided to me." Tr. 51. At that hearing Dr. Schmitter reviewed several exhibits with the ALJ and Plaintiff's counsel and explained his opinion that there were not any objective findings of neurological components to Plaintiff's back pain to establish at Step Three that Plaintiff is disabled. Tr. 54-56. After the hearing the ALJ sent additional medical records to Dr. Schmitter together with a Medical Interrogatory in which the ALJ asked Dr. Schmitter several additional questions. Tr. 1304-05. Dr. Schmitter indicated the additional medical records did not change his opinion that he provided at the hearing and that there still was "never any documented neuropathy." Tr. 1304-05.

Plaintiff has not pointed to any evidence that directly contradicts Dr. Schmitter's findings or that establishes the ALJ erred when she relied on Dr. Schmitter's opinion. Accordingly, the Court concludes Dr. Schmitter's opinion constitutes

substantial evidence to support the ALJ's finding that Plaintiff's back conditions do not meet the criteria of Listing 1.04A.

On this record, therefore, the Court concludes the ALJ did not err at Step Three.

### III. **Plaintiff's Testimony**

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). *See also Spelatz v. Astrue*, 321 F. App'x 689, 692 (9th Cir. 2009).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). *See also Delgado v. Commissioner of Social Sec. Admin.*, 500 F. App'x 570, 570 (9th Cir. 2012).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's

testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the July 23, 2014, hearing, Plaintiff testified her previous employment ended because "of the pain [she] was in" and because her employer repeatedly sent her home as a result of that pain.  Tr. 81.  Although Plaintiff previously had back surgery, she testified her back pain "now is just like it was before [she] had surgery."  Tr. 87.  Plaintiff stated her medications affect her ability to concentrate and cause her to "fall asleep several times throughout the day."  Tr. 81.  Plaintiff testified she does not do any household chores, but she likes to swim, to read, and to sew although she cannot sew any longer as a result of the arthritis in her hands.  Tr. 86.  Plaintiff testified she "[o]ccasionally" drinks alcohol, which she defined as "I will have like a couple beers maybe once or twice a month.  I like it with my pizza."  Tr. 82.

In her August 7, 2012, Adult Function Report, Plaintiff reported she uses a cane to get around the house, that it takes her 45 minutes to dress in the morning, and that she is unable to bend down to pick up clothes.  Tr. 341.  Plaintiff stated she uses her cane to walk outside and that she uses a scooter when she goes to the store.  Tr. 341.  Plaintiff reported her pain

makes it difficult to sleep. Tr. 341. Plaintiff indicated she vacuums and does dishes and laundry around the house with the assistance of her cane, but she does not do any chores outside. Tr. 343. Plaintiff stated she does not go anywhere other than the pharmacy, grocery store, work, and the bank. Tr. 344.

Plaintiff indicated her conditions affect her abilities to lift, to squat, to bend, to stand, to reach, to walk, to sit, to kneel, to climb stairs, to remember, to complete tasks, to concentrate, and to use her hands. Tr. 345. Plaintiff stated she can only walk for 10 or 12 feet before requiring 5 or 10 minutes of rest. Tr. 345. Plaintiff reported she can pay attention for 20 to 30 minutes, follows written and spoken instructions well, and gets along with authority figures, but she does not handle stress or changes in routine well. Tr. 345-46. Plaintiff stated she ambulates with a cane that was prescribed in 2003 and uses scooters when they are available in the store. Tr. 346.

The ALJ discredited Plaintiff's testimony because (1) Plaintiff's testimony was inconsistent with the medical record and she exaggerated her symptoms, (2) Plaintiff's failure to seek treatment from specialists indicated her conditions were not as severe as alleged, (3) Plaintiff's testimony was inconsistent with that of the medical expert, (4) Plaintiff's pain was controlled by medication, (5) Plaintiff's reported

activities of daily living were inconsistent with those reported throughout the record, and (6) Plaintiff's sporadic prior work history suggests Plaintiff lacks the motivation to work.

The ALJ identified several inconsistencies between Plaintiff's testimony and the medical record. For example, Dr. Hill noted Plaintiff "did well for two years or more" after her 2011 lower-back surgery, which the ALJ found inconsistent with Plaintiff's alleged onset date of disability in 2009 as well as her 2012 Adult Function Report in which she reported significant limitations caused by her lower back. Tr. 1299. Moreover, as the ALJ noted, Plaintiff's gait was routinely described as "stable and fluid" by treatment providers throughout 2011, 2012, and 2013, which the ALJ reasonably found contradicted Plaintiff's Adult Function Report in which she stated she regularly used a cane to ambulate and that the cane had been prescribed as far back as 2003. *See, e.g.*, Tr. 836, 841, 848, 854, 857, 860, 863, 871, 876, 879, 890.

Moreover, the ALJ correctly noted Plaintiff misrepresented the severity of her various conditions throughout the record. For example, on December 18, 2013, Plaintiff told Kristin Cummings, PMHNP, that her right hip "will be being replaced soon," but the findings in her September 28, 2013, MRI as to her right hip showed that her condition was mild and none of her medical providers indicated a hip replacement was necessary.

Tr. 565, 753.  Similarly, on March 14, 2013, Plaintiff told
Albert Rodriguez, P.A., that she had "severe" arthritis in her
cervical spine, but Plaintiff's cervical-spine x-rays taken March
11, 2013, were "negative" and an August 12, 2013, CT scan of her
cervical spine revealed only a mild condition that was unchanged
from an MRI performed on March 19, 2013.  Tr. 750, 773, 869.
Moreover, the ALJ noted although Plaintiff described significant
limitations in her activities of daily living in her August 2012
Adult Function Report, she reported to FNP Kathleen Harris-Hobbs
on December 4, 2012, that her pain medication "allows her to
function with her ADL's [*sic*]."  Tr. 860.

    With respect to her mental health, Plaintiff indicated in
her Adult Function Report that she was "very good" at getting
along with authority figures and had never lost a job because of
problems getting along with others, but on May 23, 2014,
Plaintiff told QMHP Lindsay Miller that she would "'yell at
people' and would get fired."  Tr. 345, 539.  Thus, the ALJ's
finding that Plaintiff exaggerated her symptoms and made
allegations inconsistent with the medical record is amply
supported by the record.

    The ALJ also reasoned Plaintiff's failure to consistently
seek treatment by a specialist indicated her symptoms were not as
severe as alleged.  "[A]lthough a conservative course of
treatment can undermine allegations of debilitating pain, such

fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle*, 533 F.3d at 1162. In this case the ALJ's reference to Plaintiff's conservative course of treatment is not persuasive. As noted, Plaintiff underwent lower-back surgery in 2011 and regularly saw her primary-care providers for treatment and medication management after that surgery. Although her back pain was managed with medication for an extended period, beginning in August 2013 Plaintiff's treatment providers frequently worked to obtain walkers and scooters to assist with her ambulation and periodically referred her to specialists. *See, e.g.*, Tr. 929, 938, 962, 978. Moreover, Plaintiff returned to Dr. Hill, her orthopedic surgeon, for an examination on November 6, 2014. Tr. 1299-1303. Accordingly, the record does not support the ALJ's discrediting of Plaintiff's testimony on the basis that her medical treatment was routine and conservative.

The ALJ also discredited Plaintiff's testimony regarding her back condition on the basis that the medical record indicated her symptoms were controlled with medication. The ALJ's finding is partially supported by the record. Throughout 2012 and into 2013 the medical record contains numerous indications that Plaintiff's back pain was controlled by medication. *See, e.g.*, Tr. 844, 848, 854, 860-61, 864, 871-72, 876, 879-80, 883. In summer 2013,

however, the medical evidence reflects a significant and sudden change in Plaintiff's symptoms that caused her gait to quickly destabilize and her reports and treatment-providers' findings of back pain to worsen. *See, e.g.*, 907-08, 929-30, 938-39, 962-63, 977-78. The Court notes there is not any clear explanation in the record for this sudden change in Plaintiff's symptoms and limitations. Accordingly, although the fact that Plaintiff's back pain was being controlled by medication was a clear and convincing reason to discredit Plaintiff's symptom testimony as it relates to her functionality in 2012 and early 2013, it does not support the ALJ's findings as they relate to Plaintiff's condition after August 2013.

The ALJ also found Plaintiff's testimony was not credible on the basis that the activities of daily living that she reported in her testimony and Adult Function Report differed from those reflected in the medical record. For example, the ALJ correctly noted Plaintiff indicated in her August 2012 Adult Function Report that she only cared for her daughter and, in fact, required assistance with many of her own activities of daily living. On July 11, 2012, however, Plaintiff reported "[s]he provides care for her partner including showers and toileting." Tr. 533. In addition, the ALJ reasonably found Plaintiff's March 21, 2014, report that "she has been lifting weights" for exercise was inconsistent with Plaintiff's allegations of

significant physical limitations in her testimony at the hearing and in her Adult Function Report.  Tr. 986.

Finally, the ALJ found Plaintiff's sporadic work history indicated she lacked the motivation to work and that her physical and mental limitations were not the cause of her unemployment. Although the ALJ is correct that Plaintiff lacks an extensive work history, the Court finds this fact to be of minimal importance when determining whether Plaintiff's testimony is credible.

Although not all of the ALJ's reasons for discrediting Plaintiff's testimony were valid, the Court concludes the ALJ provided clear and convincing reasons to discredit Plaintiff's testimony.  In particular, the Court finds the ALJ identified enough examples of Plaintiff exaggerating symptoms or making allegations that were inconsistent with the medical record to cast doubt on the entirety of Plaintiff's testimony and subjective symptom reporting.

On this record, therefore, the Court concludes the ALJ did not err when she discredited Plaintiff's testimony because she provided legally sufficient reasons for doing so.

**IV.** **Medical Testimony**

As noted, Plaintiff contends the ALJ erred when she discredited the medical opinions of Douglas Eubanks, D.O. (Plaintiff's treating physician); Curtis Hill, M.D. (Plaintiff's

treating neurosurgeon); and the nonexamining opinion of Megan D. Nicoloff, Psy.D., and Kardell N. Kennemer, Psy.D.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are supported by substantial evidence in the record. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010)(quoting *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir. 1995)). The opinion of a treating physician is "given greater weight than the opinions of other physicians." *Kelly v. Astrue,* No. 10–36147, 2012 WL 767306, at *1 (9th Cir. 2012)(quoting *Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir. 1996)).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). *See also Garrison v. Colvin*, No. 12-CV-15103, 2014 WL 3397218, at *13 (9th Cir. 2014). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Taylor,* 659 F.3d at 1233 (quoting *Lester*, 81 F.3d at 831). When a nonexamining

physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See, e.g.*, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). *See also Simpson v. Astrue*, No. 10-cv-06399-BR, 2012 WL 1340113, at *5 (D. Or. Apr. 18, 2012).

## A. Dr. Eubanks's Opinion

Dr. Eubanks, one of Plaintiff's primary-care physicians, submitted a letter on December 17, 2014, and a worksheet on January 9, 2015. In the letter Dr. Eubanks stated Plaintiff "suffers from multiple conditions that limit her mobility including enthesopathy of the hip as well as degeneration of the spine." Tr. 1310. Dr. Eubanks opined Plaintiff's "ability to bend, stand, walk, or crawl for long periods is limited by these conditions." Tr. 1310.

On the worksheet Dr. Eubanks reported Plaintiff's symptoms were "chronic pain, paresthesia, and muscle weakness." Tr. 1312. Dr. Eubanks indicated Plaintiff cannot lift or carry any weight, can stand and/or walk for 30 minutes at a time but for no more

than one hour in an eight-hour workday, and can sit for one or
two hours at a time but no more than two hours in an eight-hour
workday. Tr. 1312. Dr. Eubanks indicated Plaintiff cannot
climb, balance, stoop, bend, kneel, crouch, crawl, or reach
overhead; can occasionally reach and handle; and can frequently
feel and engage in fine manipulation. Tr. 1313. Dr. Eubanks
indicated Plaintiff experiences nausea, fatigue, dizziness, and
short-term memory impairment as side effects of her medications,
which impair her ability to sustain attention and concentration
sufficient to perform even simple work tasks. Tr. 1313.
Dr. Eubanks estimated Plaintiff would have impaired attention and
concentration 20% of the time and that she would miss more than
16 hours of work per month as a result of her conditions.
Tr. 1313-14.

    The ALJ discredited Dr. Eubanks's opinion because
(1) Dr. Eubanks did not have any contact with Plaintiff between
2011 and 2014; (2) his opinion was inconsistent with that of
Dr. Schmitter, the nonexamining medical expert that testified at
the hearing; and (3) Dr. Eubanks's opinion was inconsistent
with the medical record and Plaintiff's own reporting. Although
the inconsistency between Dr. Eubanks's opinion and the opinion
of Dr. Schmitter is not a sufficient reason to discredit
Dr. Eubanks's opinion, it means, nonetheless, that the ALJ is
only required to provide specific and legitimate reasons to

discredit Dr. Eubanks's opinion.  *See Ryan*, 528 F.3d at 1198.

The ALJ was correct that Dr. Eubanks did not have a significant treatment relationship with Plaintiff.  Dr. Eubanks treated Plaintiff on only one occasion:  October 16, 2013. Tr. 929-30.  The ALJ, therefore, reasonably discredited Dr. Eubanks's opinion on the basis that he did not have a significant treatment relationship with Plaintiff.

The ALJ also discredited Dr. Eubanks's opinion on the basis that it was inconsistent with the medical record and Plaintiff's testimony.  As the ALJ noted, Dr. Eubanks's opinion that Plaintiff could not lift or carry any weight is not consistent with Plaintiff's reports that she is capable of attending to her activities of daily living, caring for family members, and even lifting weights for exercise.  *See, e.g.*, Tr. 986, 1001. Moreover, the ALJ reasonably found Dr. Eubanks's opinion that Plaintiff would exhibit substantially impaired attention and concentration were inconsistent with mental-status examinations that did not identify any deficit in attention and concentration. *See, e.g.*, Tr. 531, 546-47, 551-52, 557-58.

On this record, therefore, the Court concludes the ALJ did not err when she discredited Dr. Eubanks's opinion because she provided legally sufficient reasons for doing so.

**B.   Dr. Hill's Opinion**

Dr. Hill, Plaintiff's treating neurosurgeon, performed Plaintiff's back surgery in July 2011 and again treated Plaintiff in 2014. After the 2014 visit Dr. Hill completed a Neurological History and Physical Examination that he sent by letter to FNP Danielle Blackwell one of Plaintiff's primary-care providers. In that letter Dr. Hill described Plaintiff's conditions and indicated an MRI revealed Plaintiff has "multiple level[s] of foraminal stenosis" in the lumbar spine. Tr. 1299. Dr. Hill briefly described his physical examination of Plaintiff and determined it would be useful for another physician to conduct a "diagnostic nerve root block" to address Plaintiff's low-back symptoms. Tr. 1300.

The ALJ did not specifically comment on Dr. Hill's letter. Plaintiff contends the ALJ's failure to comment on the letter was error. The Court disagrees. Dr. Hill's letter to FNP Blackwell does not constitute testimony submitted to the Commissioner as an outline of the claimant's medical diagnoses and functional limitations. Instead Dr. Hill's letter is merely correspondence between medical providers in which Dr. Hill, as a specialist, discusses his examination of Plaintiff and treatment options. In that respect it is indistinguishable from a routine chart note for purposes of evaluating Plaintiff's disability. The ALJ need not comment on every piece of evidence in the record. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). *See also*

*Bostwick v. Berryhill*, 677 F. App'x 344, 345 (9th Cir. 2017).
Moreover, there is not anything in Dr. Hill's letter to
FNP Blackwell that would require the ALJ to comment on it
separately from the remainder of the medical record.

Accordingly, on this record the Court concludes the ALJ did
not err when she did not comment specifically on Dr. Hill's
letter to FNP Blackwell.

### C.   Opinion of Drs. Nicoloff and Kennemer

Finally, Plaintiff contends the ALJ erred when she did not
fully include the limitations identified by Drs. Nicoloff and
Kennemer in her assessment of Plaintiff's RFC.  Drs. Nicoloff and
Kennemer, both nonexamining psychologists, opined Plaintiff's
"use of narcotic pain med[ication], mood [disorder,] and PTSD
[symptoms] would preclude performing detailed/complex tasks on a
regular basis.  While she could perform them once in awhile [*sic*]
she is not limited in her ability to perform simple, repetitive,
routine tasks of 1-2 steps as evidenced by her ability to drive,
do [household] chores, read and handle all finances including
shopping."  Tr. 150-51, 164-65.

The ALJ gave the opinion of Drs. Nicoloff and Kennemer
"significant weight."  Tr. 34.  In her assessment of Plaintiff's
RFC, however, the ALJ limited Plaintiff to "simple, routine
tasks."  Tr. 27.  Plaintiff, therefore, contends the ALJ did not
adequately incorporate the opinion of Drs. Nicoloff and Kennemer

into her assessment of Plaintiff's RFC.

The Ninth Circuit has held a limitation to "simple, 1-2 step work" is consistent only with jobs at Reasoning Level 1 and, therefore, is not consistent with jobs at Reasoning Level 2 absent further explanation from the VE. *Rounds v. Comm'r Soc. Sec. Admin.*, 795 F.3d 1177 (9th Cir. 2015). The ALJ's omission of "1-2 step tasks" from her assessment of Plaintiff's RFC, therefore, was material and required the ALJ to explain why she discredited the "1-2 step" portion of the opinion of Drs. Nicoloff and Kennemer. Accordingly, the ALJ failed to adequately account for the opinion of Drs. Nicoloff and Kennemer in the RFC assessment. Moreover, this error was not harmless because each of the jobs that the VE identified and the ALJ relied on at Step Five require Reasoning Level 2. *See* Dictionary of Occupational Titles §§ 209.587-034 (price marker), 318.667-018 (silver wrapper), 369.687-018 (laundry folder).

On this record, therefore, the Court concludes the ALJ erred when she failed to fully incorporate the opinion of Drs. Nicoloff and Kennemer into her assessment of Plaintiff's RFC or to provide legally sufficient reasons for partially discrediting their opinion.

**V.    Lay-Witness Testimony**

As noted, Plaintiff contends the ALJ erred when she failed to address the lay-witness testimony of Sherry Sweeney,

Plaintiff's partner.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Commissioner, Social Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006). Nevertheless, an ALJ is not required to address each lay-witness statement or testimony on an "individualized, witness-by-witness basis. Rather if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012)(quotation omitted). Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 Fed. App'x 866 (9th Cir. 2012).

Sherry Sweeney submitted a letter dated April 6, 2014, in which she stated she had lived with Plaintiff for the last nine months and helped her with daily chores, showering, and getting dressed. Tr. 379. Sherry Sweeney stated she cooks for Plaintiff

every other day and drives Plaintiff to all doctor appointments and to the grocery store. Tr. 379. Sherry Sweeney reported Plaintiff is able to stand long enough to put dishes in the dishwasher, but she must lay down immediately thereafter. Tr. 379.

The ALJ did not address Sherry Sweeney's testimony. An ALJ's failure to address lay-witness testimony is harmless error, however, when the same reasons that the ALJ relied on to discredit the claimant's testimony also discredit the lay-witness testimony. *See Molina*, 674 F.3d at 1122. Here, however, the majority of reasons that the ALJ properly provided for discrediting Plaintiff's testimony were personal to Plaintiff and do not apply to Sherry Sweeney's testimony.

Accordingly, on this record the Court concludes the ALJ erred when she failed to address the lay-witness testimony of Sherry Sweeney.

## VI.  Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient

to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine whether a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are not any outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if such evidence were credited.

*Id.* The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010). When the reviewing court finds the elements of the "credit-as-true" rule have been satisfied, however, the court may only remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

As noted, the Court concludes the ALJ erred when she failed to properly account for the opinion of Drs. Nicoloff and Kennemer and when she failed to address the lay-witness testimony of Sherry Sweeney. Further proceedings are necessary to permit the

ALJ to determine how the opinions of Drs. Nicoloff and Kennemer and the testimony of Sherry Sweeney affect the ALJ's assessment of Plaintiff's RFC and, ultimately, the ALJ's determination as to whether Plaintiff is disabled.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 17th day of October, 2017.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge